In the Matter of AMSTERDAM NURSING HOME CORPORATION, Respondent, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Appellants.

Third Department, December 5, 1991

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Peter G. Crary* of counsel), for appellants.

*Cadwalader, Wickersham & Taft (William J. Natbony, Peter G. Bergmann* and *Kathy H. Chin* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

In 1986, petitioner brought a proceeding pursuant to CPLR article 78 to obtain judicial review of respondents' determination of the 1983 and 1984 Medicaid reimbursement rates for petitioner's nursing home facility. The primary challenge to the determination was the refusal by respondent Commissioner of Health to consider petitioner's actual historical costs

in fixing an appropriate depreciation expense for rate recovery of petitioner's capital costs. As is more extensively described in our previous decision in that matter *(Matter of Amsterdam Nursing Home Corp. v Axelrod,* 135 AD2d 331 [hereinafter *Amsterdam I])*, the Commissioner originally determined that petitioner could only claim depreciation on the amount of the mortgage proceeds obtained from the State Medical Care Facilities Finance Agency (hereinafter MCFFA) for financing construction of its facility. While that proceeding was still initially pending before Supreme Court, the Commissioner modified the foregoing limitation by permitting depreciation reimbursement beyond the amount of the MCFFA mortgage proceeds, but limited it instead to petitioner's then recently audited "approved project costs" *(supra,* at 333), i.e., those project costs set forth in a schedule attached to petitioner's loan application to MCFFA found reasonable and necessary by the Commissioner in the statutory loan approval process (hereinafter referred to as the financing APCs; *see,* Public Health Law § 2852 [4]).

In *Amsterdam I,* we affirmed Supreme Court's annulment of the 1983 and 1984 Medicaid reimbursement rate determinations for petitioner's facility, agreeing with that court that, in the absence of authorization under a duly promulgated rule or regulation, the Commissioner could not validly apply a rigid principle limiting depreciation expense reimbursement to the facility's financing APCs *(see, Matter of Amsterdam Nursing Home Corp. v Axelrod, supra,* at 334-337). We, thus, affirmed Supreme Court's annulment of respondents' rate determinations and remitted the matter to the Department of Health (hereinafter DOH) for recomputation of the 1983 and 1984 rates using appropriate cost-based factors to determine the allowable depreciation expense.

Upon remittal, DOH's Bureau of Residential Health Care Reimbursement increased the recoverable capital costs of petitioner's facility by some $2,383,000 and allowed a depreciation expense on the revised total cost using the straight-line method for a useful life of 40 years. Petitioner's Medicaid reimbursement rates for 1983 through 1988 were modified accordingly.

Petitioner then commenced this new CPLR article 78 proceeding to challenge the foregoing determination. It raises three objections: (1) respondents acted arbitrarily in violation of the judgment in *Amsterdam I* in refusing to adjust petitioner's Medicaid reimbursement rates for the 1976 through 1982

rate years to reflect the mandated increase in total project costs allowable for depreciation purposes, (2) respondents erred in imposing a 40-year depreciation schedule on the most significant elements of the newly allowable project costs, such as $1,800,000 in initial occupancy expenses, in violation of a DOH manual regarding depreciation of development costs, and (3) respondents arbitrarily refused to include legitimate project costs of $12,504 plus architect fees in determining the allowable project costs for depreciation reimbursement. Supreme Court granted the petition in full, overruling respondents' defenses based, *inter alia,* on the Statute of Limitations and petitioner's failure to exhaust administrative remedies. This appeal followed.

■ We reverse. The foremost issue on appeal is whether Supreme Court correctly ruled that petitioner was entitled to retroactive revision of its Medicaid reimbursement rates for the rate years 1976 through 1982 on the basis of our holding in *Amsterdam I.* Uncontestably, reimbursement rate determinations for those years, in each of which depreciation on project costs of the facility in excess of the MCFFA mortgage proceeds was denied, were final and binding when made and communicated to petitioner, for purposes of starting the four-month Statute of Limitations under CPLR 217 *(see, Matter of Abrams v Public Serv. Commn.,* 61 NY2d 718, *affg on mem below* 96 AD2d 701; *New York State Assn. of Counties v Axelrod,* 150 AD2d 845, 847, *lv dismissed* 75 NY2d 765; *cf., New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 165-166). Indeed, any other interpretation deferring the starting of the limitations period would have resulted in dismissal of the proceeding in *Amsterdam I* as premature. It follows that petitioner's attempt to obtain revision of its 1976 through 1982 Medicaid reimbursement rates in the instant proceeding is time barred unless there is some valid basis for not applying the Statute of Limitations to the earlier rate determinations for those years.

Petitioner alleges essentially two reasons to avoid application of the Statute of Limitations to its request for retroactive adjustment of its 1976 through 1982 Medicaid reimbursement rates. The first is that such retroactive adjustment was required by the judgment in *Amsterdam I.* This is manifestly not so. The petition in *Amsterdam I* in unmistakable terms only sought judicial review of petitioner's 1983 and 1984 Medicaid reimbursement rates; it was only the 1983 and 1984 rates that were annulled; and the matter was remitted solely

for recomputation of the 1983 and 1984 rates consistent with the judicial decisions in the case. Thus, petitioner clearly was wrong in alleging in the petition that "[a]bsent additional reimbursement [for rate years 1976 through 1982 it] will not receive the amounts judicially determined to be due".

Alternatively, petitioner avers that respondents had an "internal reimbursement policy" whereby revisions in allowable project costs for depreciation purposes would be applied to Medicaid reimbursement rates retroactively as well as prospectively. Therefore, according to petitioner, the Statute of Limitations was triggered again when, upon remittal pursuant to the decision in *Amsterdam I*, respondents arbitrarily deviated from that policy in refusing to adjust petitioner's 1976 through 1982 rates consistently with the decision. This argument is also unpersuasive. The only evidence cited in the petition for the existence of such an alleged internal reimbursement policy was the previously described modification of the Commissioner's initial position, during the pendency of *Amsterdam I* before Supreme Court, so as to permit petitioner's rate to be adjusted retroactively and prospectively in accordance with DOH's contemporaneous final audit of the facility's financing APCs. There is no question that the retroactive and prospective adjustments of petitioner's rates relied upon by petitioner here were expressly stated by respondents to have been made so as to conform to petitioner's financing APCs as finally established by the DOH audit. Respondents point out, however, that retroactive reimbursement rate revision to conform to the results of a DOH audit constitutes an exception to this State's generally prospective approach to Medicaid reimbursement rate regulations, and is specifically authorized by the Medicaid regulations (see, 10 NYCRR 86-2.7 [g]). Petitioner failed to seek judicial review of the adequacy of DOH's determination retroactively revising petitioner's final financing APCs in accordance with the DOH audit. Thus, there was no judicial review in *Amsterdam I* of the rate revisions based upon the 1986 audit, as expressly noted in this court's decision in *Amsterdam I* (see, *Matter of Amsterdam Nursing Home Corp. v Axelrod, supra,* at 334).

Inasmuch as the revisions to petitioner's 1983 and 1984 Medicaid reimbursement rates made by the Commissioner on remittal after *Amsterdam I* were *not* based upon any audit of costs, we fail to discern any departure from the claimed DOH policy with respect to rate revisions resulting from an audit of

costs. Even more to the point, any prior DOH policy for retroactive rate revision to conform to a final audit of financing APCs appears to us to have no application to revisions of petitioner's Medicaid reimbursement rates made upon remittal pursuant to the judicial holding in *Amsterdam I* that petitioner's financing APCs were *not* to be determinative in fixing those rates. Accordingly, petitioner has failed in its attempt to avoid application of the Statute of Limitations to its claims for retroactive revision of its 1976 through 1982 Medicaid reimbursement rates.

■ In our view, the remaining objections in the petition to the Commissioner's rate determination upon remittal should also have been dismissed because of petitioner's failure to exhaust its administrative remedies. In *Amsterdam I,* this court affirmed Supreme Court's "remittal to the Commissioner for a recomputation of reimbursement rates under the appropriate existing statutory and regulatory standards" *(supra,* at 337). The underlying basis of this court's decision was that the Commissioner could not impose an inflexible ceiling for depreciating the capital costs of petitioner's facility, based upon petitioner's financing APCs. Clearly, then, the judgment in *Amsterdam I* did not dictate what elements of petitioner's historical project costs were to be included as reasonable and necessary, or the depreciation method to be applied. Not only were such issues not addressed in *Amsterdam I,* but they also involved factual matters not covered by the record in *Amsterdam I.* Consequently, Supreme Court erred in ruling that *Amsterdam I* was controlling on petitioner's objections to the omission of certain project costs in the recalculation of petitioner's depreciation expense, and to the application of a 40-year straight-line method of depreciation. Because petitioner has not established any valid ground for shortcutting the administrative process, its failure to exhaust its administrative remedies before seeking judicial review is fatal to those remaining portions of the petition *(see, Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57; *Matter of Saint Mary's Hosp. v Axelrod,* 108 AD2d 1068, 1070).

CASEY, J. P., MIKOLL, YESAWICH JR. and CREW III, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, and petition dismissed.